take up Borges v. County of Mendocino. Mr. Cohen. Yes, Your Honor. Thank you. My name is William Cohen. I'm arguing for the Petitioners of Balance, Ann Marie Borges and Chris Gurr. May it please the Court, I'd like to reserve four minutes for rebuttal. All right. Watch your clock. Thank you. We'll do. We're here in part because of a decision called Gonzales v. Raich that was for concluding that, quote, the enforcement difficulties that attend distinguishing between marijuana grown locally and marijuana grown elsewhere and diversion into illicit channels, end quote, justifies the irrebuttable presumption that all marijuana has a substantial effect on your state commerce. So we quoted in our opening. I'm sorry. Did you want to ask a question? Yes, I do. You're arguing to us that we should revisit Gonzales v. Raich, which obviously is an intermediate appellate court. We can't. That aside, you're arguing that we should revisit it in light of the fact that more states have legal interstate marijuana markets. But to me, that seems counterintuitive. It seems to me that the widespread availability of marijuana strengthens Raich's analogy to Wicker, not diminishes it, making it more of a national market, albeit federally unlawful. Well, we quoted from Justice Thomas in our opening brief because he points out that in June of 21, that since Gonzales was decided, the number of states legalizing marijuana had quadrupled from nine to 36. And federal marijuana policy was no longer rational in our system of federalism. And since June, two more states have legalized marijuana. But now, just last month, another panel of this court decided Shulman v. Kaplan and refused to recognize the violation of 38 states' sovereignty in our federal system. The Shulman decision is irrational because it refuses to recognize the pertinent facts that have changed so dramatically that it ignores 38 states' sovereignty, also without a single word. Instead, Shulman misrepresents the positive facts by saying, quote, some states, such as California, have changed their legal regime concerning marijuana, instead of saying, not some states, such as California, 38 states, including California. And the rationale is then they substitute, that panel substitutes heroin for marijuana for purposes of its analysis. Counsel, I guess my second point, in addition to the logical counterintuitive point, is so yes, it seems to be problematic. Isn't that something for Congress or the Supreme Court to deal with? Actually, Congress and Supreme Court have already dealt with it. And that's why we're now. In Section 903 of the Controlled Substances Act, which we've quoted in our brief, it makes it very clear that Congress did not attempt to preempt states from legalizing or otherwise acting in connection with modifying what would otherwise be the global interstate commerce application. And the actual rationale of the court was that they said in Gonzalez, we have no difficulty in concluding that Congress had a rational basis for believing that, and these are the key words, failure to regulate the intrastate manufacture and possession of marijuana will leave a gaping hole in the Controlled Substances Act. Well, the recent advent of the pervasive regulation of interstate manufacturing possession of marijuana makes that totally irrational to take that position. Now, there are comprehensive regulatory regimes for intrastate commerce. And therefore, this interpretation that ignores the rationale of Gonzalez v. Race doesn't make any sense. It was our belief and is our belief that this court should consider the facts and the rationale of the decision and the limited scope of the Controlled Substances Act to look at this we can't pretend like 38 states haven't implemented comprehensive regulatory regime, particularly California. There are thousands of agents of the state of California, they're issuing licenses to do what we're told. Well, that's all in violation of federal law. But that presupposes what can no longer be established without giving someone who has a license, a chance to rebut that presumption. And that's all we're asking the court to do. There will still be pervasive federal regulation, but it will be limited to interstate commerce, which is the limitation that was clearly recognized in the Controlled Substances Act itself. And then the Supreme Court's decision that this court can, of course, as the lower court did turn a blind eye and a deaf ear to the real world that we live in. But I don't think that talk about your equal protection claim. It has to meet a high bar of, you know, intentional, different treatment compared to other similarly situated, no rational basis for the difference in treatment. What's your best argument that you have on similarly situated comparators? Well, there were no similarly situated people with respect to the zoning. If you're talking about the zoning, which was basically saying, well, there was a discussion among a bunch of neighbors who were connected to the county commissioners. So the county commissioners implemented a regime in Mendocino County that said that because some facts were alleged that might have led to a conclusion that there was a traffic impact or a water use impact or the residential character of the neighborhood, that somehow that justified depriving our clients of what agricultural zoning and their license entitled them to. There was no evidence of any traffic. It was a dead end road. There was no evidence of any water diversion. There was no evidence of any impact on the residential character, because for one thing, it's agricultural. And our clients have an 11 acre farm, and this was on one quarter of one of those acres. So none of that is rational. With respect to the That was the original basis that was articulated in the July 2018 letter that supposedly justified denying our clients their license. Yes, but Council, was there any evidence that anybody else received a B3 relocation permit who wasn't currently cultivating marijuana on January 1, 2016? No, but there's no requirement in the statute that someone be cultivating as of 2016. Well, that is intended by the county. It's nowhere in the ordinance, Your Honor. And that's why the license was granted, because first of all, the license was granted based on the coastal zone cultivation that Ms. Borges had substantiated. Then when it was determined that that was not sufficient, the coastal zone cultivation was not sufficient to meet the threshold, then Ms. Borges provided evidence that the cannabis that she cultivated had been done in a legitimate zone in the Willis, California area. For your B3 relocation permit, you have to satisfy B1, and B1 is the legacy grower requirement. It's incorporated. That was satisfied, and that's why Commissioner Curry found that they were entitled to a license. She provided proof of legacy growing twice, first in a coastal zone that was not deemed to be appropriate or satisfactory, and then in Willis. And all that the county demanded at that point... But she didn't own the property. She didn't own the property or control the property anymore. Again... So how... Go ahead. That's B3, Your Honor, respectfully. And furthermore, there was no requirement that she control the property. She was able to obtain certification that that property would not be used. There's nothing about ownership in the ordinance. So again, that's not rational to just import new requirements that don't appear in the ordinance to justify something supposedly based on the ordinance. Instead, the county says, oh, well, this is in the frequently asked questions provision. We point out there's no provision of which I'm aware, and certainly none has been pointed out by the appellee, that FAQs are somehow imported and incorporated. Let me ask you a question. Do you think that treating legacy growers differently is rational? Sure. Okay. And your client did apply for a B3 permit, so they had to show that if they wanted to relocate and grow on another site, that they were going to restore their legacy growing site to non-cannabis growing purposes and relocate and grow cannabis somewhere else, right? So then it would be important to show that you control that property, that you could restore it to a non-cannabis growing purpose. That was done, Your Honor. There's no contention that that wasn't done. Instead, the appellee substituted, well, you have to show that you're continuously growing, which again, there is no such continuity requirement. I did want to reserve... Four minutes, and you're now at three and a half. So why don't you hold it for rebuttal? And we'll let Ms. Graham... Good morning, Your Honors. May it please the court. I'd like to focus on two points today that have come up in oral argument as well as in the reply brief, and Your Honors have addressed a few of these comments, but I will briefly go through them. The first point I would raise is that as Your Honors have noted today, Gonzales, despite counsel's advocacy, remains the law. It's binding here. And under Gonzales, there is no protectable property interest in the federal law. And as Gonzales notes, Congress has the power to regulate under its Commerce Clause powers and under the language of the Controlled Substances Act. The recent Shulman v. Kaplan decision from this circuit just last month reaffirms that cannabis is per se contraband under federal law and that the Controlled Substances Act remains a constitutional exercise of Congress's regulatory powers. So when we're looking at a Fourteenth Amendment due process claim, for it to stand, we must look to federal law that determines whether the interest actually rises to the level of a legitimate claim of entitlement that's protected by due process. And many district courts have considered this issue. They have uniformly applied this law to facts similar to what we're dealing with in this case. And they found that despite recent state legalization, there is still no federal constitutional right to cultivate cannabis. And on these facts and on this law, which must be applied here, there's simply no exception, and the due process claim fails. I would note in terms of the arguments that there is some rebuttable presumption and that we can take this case out of the scope of Gonzalez, that that's simply not true. This is a direct application of what Gonzalez says. And Gonzalez, as Judge Wardlaw noted today, looks at even whether there is intrastate commerce. And the court said that whether local cultivation, sale, or use of cannabis have even a de minimis impact on interstate commerce, it can be regulated. That's squarely decided by the Gonzalez court. The Gonzalez court explains that their power to regulate extends even to purely local activities if they're part of an economic class of these activities and have a substantial impact on interstate commerce. Judge Wardlaw, as you noted, the fact that there are more states that have Congress noted that any impact on the interstate market means that they can regulate. And we are looking at that total incidence on the marketplace, and they have the ability then to regulate the entire class. If I can just briefly address as well, the equal protection argument. Yes, counsel, there's some evidence in the record that is concerning, or at least somewhat troubling. So Commissioner Curry did submit a declaration that says that the plaintiffs had satisfied the prior cultivation requirements for a revocation permit. But then I guess the county council then said, no, the Supervisor would never allow Borges and Grer to be approved for a permit. And that's at least troubling. I mean, it sounds like the statute or the ordinance, which isn't, you know, the most clearly written ordinance in the world, was construed differently by various people in charge at different times, raising somewhat of an inference of, you know, what's your explanation for that? Sure. So the first thing I would note is that when Ms. Curry issued the provisional license, it was just that. And the language of it made clear that this was not any type of assurance that a license would be granted. The requirements under both B-1 and in this case for a relocation permit under B-3 had to be met. And they needed to be applied. The ordinance, I would agree, Your Honor, that there is some reading into the ordinance that must be done. But what it makes clear is that the purpose of this, looking not only at the language, but also at the legislative intent, was to make sure that for those legacy growers, they were coming in under phase one, and that they met the requirements of showing current cultivation, prior cultivation on that origin site before they could develop a new site. When Ms. Curry was looking at this... I think that's the issue, as I understand it, that Judge Wardlaw is trying to get to. Because the argument really is that it was pretextual denial, that really imposing a requirement that isn't apparent on the plain face of the statute. So how do you address specifically to the point as to whether current cultivation on the original site was even required in the first place? Sure. So I think that point is actually clear in the language of the ordinance. So if I can just read from section B-1, it says, persons applying for a permit during phase one, which we know applies to legacy growers, shall be required to provide to the Agricultural Commissioner evidence that they were cultivating cannabis on the cultivation site prior to January 1, 2016. And then it goes on to note that the site has to be in compliance with other requirements. And then it goes on to note what evidence can be shown to prove that prior cultivation. And I won't go through all of those, but they make photos of that site and cultivation on that site prior to January 2016. So it was not unknown, certainly just by the language of the ordinance, that phase one applied to those legacy growers, meaning that they had to be cultivating before January 1, 2016. There was also community outreach. I thought, and correct me if I'm not getting the record right, that it was only when plaintiffs provided the release form that they were then told that proof of current cultivation at the original site was required. The record suggests that the requirements shifted on them. Is that not a fair reading of the record? I don't think that is a fair reading of it. The language of the ordinance provided under section B-1, and has always provided, that there needed to be proof of origin site, meaning the site that you are currently cultivating on, and only then could you apply under the provisions of B-3 for a new site to relocate to. And the point that I was going to make, Justin, is that there were also community outreach meetings at that point. So even if somebody did not go to the language of the ordinance, as this process was being adopted, there were questions that the community asked in terms of what needed to be shown to get that legacy status and to obtain phase one permits. And they were also informed through those frequently asked questions on the website that you had to develop this origin site. There had to be proof of prior cultivation for you to then develop at a new site. And all of this was to appropriately control the process. It was phased intentionally to make sure that they were covering just the current growers to bring them into compliance, to make sure that if they were moving to a site that was new, that they were following those necessary steps. When Miss Curry was going through the process, she of course was only one person. She was acting on behalf of the Ag Department. And that initial temporary license that was granted noted that the property still needed to go through all of the additional steps. The reason that the... Yes. I'm going to interrupt you. What is the authority for us or any citizen who wants to apply for one of these permits that they have to look at the frequently asked questions on the website? Is there some play in the joints here as to how they're supposed to figure out what the requirements are? They can't just rely solely on the face of the ordinance. There's some obligation that they have to look at different sources of information. No, I think it's just common in practice in these types of new areas that because there is so much community outreach that they would be aware of the frequently asked questions. But I do think that the ordinance is sufficient. The language of the ordinance makes these requirements clear. The purpose of the frequently asked questions and the meetings was to make sure that was communicated to the community in a simpler way so that they knew what they needed to do. Of course, too, when cultivators are going through this application process to get a permit, they also have all of the materials in terms of the application and for that reason know what they need to submit. Can I ask you, I looked at B1B and it says that photographs of any cultivation activities that currently exist on a legal parcel is evidence shall include those types of photographs. So it seems to me that the ordinance might be clear that you have to show the legacy growing as of 1-1-16 or prior to that date and current. I would agree with that, Your Honor. And it also, again, if you look at the language of B3 makes that clear. So B3, if you are looking to relocate, says that persons able to show proof of prior cultivation pursuant to paragraph B1 above may apply for a permit not on the site previously cultivated and there it's defined as the origin site but on a different legal parcel, the destination site. And of course, too, as Judge Wardlaw referenced earlier, that also notes that the origin site has to be restored. So that again shows that we are talking about two different steps here in order to get a B3 permit. What about, is it possible that the plaintiff had a property interest in the permit even if not in the marijuana itself? No, and we did make this clear that where you have a provisional temporary permit like this, it does not create a property interest. And we did argue that as well to the district court. In some instances, a property interest in a permit, maybe not in a license, but in some instances there can be, right? There may be if there is some type of reliance on that permit where you have then gone on and reasonably begun business operations or something else that might show some type of prejudice or reliance. But under these circumstances, we don't think that that applies. It wasn't argued by the plaintiffs below that that occurred. And I would assert that there was certainly not the necessary evidence that the circumstances allowed them to rely on that provisional permit to continue forward with their business. They were aware. They got a permit from the person who was authorized to grant the permit. They bought the 11 acres. They were growing marijuana. Why didn't they meet the requirements to have a property interest in the permit? Well, two things. So just to note the case that discusses the fact that a provisional license doesn't create a property interest, that's Kent versus County of Yolo, and that's a federal case that we cite in our brief. But the other reason is for the reason I just said, which was this was a provisional permit. It was temporary and the language of the permit was clear on that point that they could not rely just on the temporary permit, but had to actually go through the full process to receive the permit to locate on that land. So just to hit very briefly on some of the other points that were raised, there was also no evidence of any others similarly situated that were treated differently. As Judge Worla mentioned in questioning earlier, there obviously we went through discovery and we went through document production and there was no evidence brought forward by the plaintiffs that any of the other applicants failed to prove prior cultivation on an origin site and then sought to relocate, nor that any of them received that type of a permit. So in addition to the rational basis arguments that that we've been discussing today, there was also no showing that there was in fact a class of one different treatment for these plaintiffs. And with that, unless there are any additional questions from the panel, I will submit and ask that the court affirm the trial court's ruling. Thank you, counsel. Mr. Cohen? You're on mute. You're muted, Mr. Cohen. Sorry about that. Thank you, Your Honor. Council and the courts referred to the market and they have referred to Wickard v. Filburn, but we have repeatedly made the point that there is the in which we are not questioning this. We are not questioning the wisdom or the decision in Gonzalez v. Rage. We're just saying that this court should apply it to the new circumstances where the so-called gaping hole in the Controlled Substances Act created by the lack of regulation of intrastate commerce in cannabis. There is no such void. There is no such gap. In California, it's been filled by thousands of people working for the state of California, issuing licenses, inspecting, collecting taxes, and using that tax money as in all of the 38 states that are currently implementing this regime, supposedly in violation of federal law, and laundering money according to that logic, which makes no sense. The markets are two totally distinct markets, and we concede that the federal government can regulate any cannabis that is not possessed or manufactured pursuant to a license granted by a state which is regulating it and avoiding the substantial impact. That's the test. We believe that people who have, as our clients have, relied as they did on the license that they were granted and invested hundreds of thousands of dollars, millions in terms of buying the real estate, which they carefully researched to make sure they were in an agricultural zone, and they were ideally situated to take advantage of California's licensing regime. I must also address the point of counsel saying, well, the plaintiffs' appellants had no right to be relying on their license, but at the same time saying, well, you needed to be a current grower. In other words, you needed to be growing up until the time you were granted the license, but then stop growing until your license became final. That makes no sense at all, nor is there any such continuity requirement, nor is there any reason to dignify this reference to frequently asked questions and focus groups. The same nonsensical argument was made with respect to the residential character of the neighborhood, which isn't a residential neighborhood. It's agricultural. Secondly, there was no impact on it. Thirdly, there was no traffic impact because it's a dead-end road, and there was no water impact either. That was actually used as a pretext to seize our client's marijuana, which has disappeared. But that's really all I have, unless your owners have some additional questions for me. Thank you. Okay. Thank you very much, Mr. Cohen. Borges v. The County of Mendocino will be submitted, and RNSL v. DHS has previously been submitted. So this session of the Court is adjourned for today. Thank you both. Thank you, Your Honor. Thank you, Your Honor. This Court for this session stands adjourned.
judges: WARDLAW, NGUYEN, KOH